**FEDERAL MUTUAL INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**Susie DEAL, Administratrix of the Estate of Verla Gertrude Belcher, deceased, and Douglas E. Hayes, Defendants.**

**Civ. A. No. 2824.**

United States District Court
S. D. West Virginia,
Charleston Division.

Feb. 8, 1965.

Edward W. Eardley, Steptoe & Johnson, Charleston, W. Va., for plaintiff.

Dean E. Lewis, Charleston, W. Va., for defendants.

FIELD, Chief Judge.

### Findings of Fact

1. Plaintiff, Federal Mutual Insurance Company, is an Illinois corporation authorized to do business in the State of West Virginia.

2. Susie Deal is a citizen and resident of West Virginia and is the duly qualified administratrix of the estate of Verla Gertrude Belcher, deceased.

3. Douglas E. Hayes at the time of the filing of the complaint herein was a citizen and resident of West Virginia.

4. Eugene E. Lewis of Whitesville, West Virginia, was in the spring of 1962 the operator of a gasoline station and a part-time agent for the plaintiff, having been such an agent for some ten years.

5. On March 31, 1962, Hayes came to see Lewis for the purpose of obtaining a policy of automobile liability insurance on a 1956 Buick automobile owned by Hayes. An application was taken and signed by Hayes for a policy extending coverage from March 31, 1962, to September 31 [sic], 1962, with limits of ten and twenty thousand dollars for bodily injury and five thousand dollars property damage.

6. Question 14 on the application was as follows:

"Has the insured or anyone who will use the automobile had an accident or traffic violation (as a driver) within the last three years?"

To this question Hayes answered, "No."

7. Hayes made a prepayment of $10.20 to Lewis at the time he submitted the application. The application was

taken on Saturday and was mailed to plaintiff's home office by Lewis on April 4, 1962.

8. On April 4, 1962, while driving the Buick automobile, Hayes struck and killed Verla Gertrude Belcher.

9. Lewis called the plaintiff's home office on April 4, 1962, and gave them the information about the accident. The application had not yet been received but since Lewis had bound the coverage a Family Automobile Policy No. R617 276 was assigned to the risk although no policy was ever prepared or issued.

10. On April 5, 1962, plaintiff wrote Hayes by registered mail acknowledging report of the accident, and advising him that the question of coverage could not then be resolved due to insufficient information, but that an investigation of the accident would be made without waiving the coverage question.

11. A Retail Credit report was ordered and made to plaintiff under date of April 26, 1962. This report showed no record against Hayes in the Motor Vehicle Department of West Virginia with reference to his West Virginia operator's license.

12. On May 7, 1962, plaintiff notified Hayes of the cancellation of his insurance effective May 20, 1962.

13. The defendant administratrix instituted an action against Hayes in the Circuit Court of Boone County, West Virginia, seeking damages in the amount of $25,000, and on October 4, 1962, plaintiff advised Hayes by registered mail of the demand in excess of his policy limits.

14. In October, 1962, it came to the attention of plaintiff that on April 11, 1960, Hayes had entered a plea of guilty before a Justice of the Peace in Boone County to a charge of driving sixty miles per hour in a forty mile speed zone. On the ground that Hayes had made a material misrepresentation, plaintiff advised Hayes by registered mail under date of November 30, 1962, that his policy was being cancelled *ab initio* and return of his premium tendered in full.

15. On December 19, 1962, Hayes was advised by certified mail that plaintiff would defend the Boone County action subject to a full reservation of rights on the question of coverage. This letter was returned to plaintiff by the postal authorities with a notation that delivery had been "refused."

16. On December 28, 1962, this action was instituted setting up the speeding conviction of Hayes in 1960 as a material misrepresentation. On January 29, 1963, a verdict was returned in the Boone County action in favor of Deal, Administratrix, against Hayes in the amount of Ten Thousand Dollars.

17. Subsequent to the accident Hayes had gone to Cleveland, Ohio and in October, 1962, Frances Maher, a claim adjuster of plaintiff, tried to locate him. Hayes was finally found through his father with whom he was staying temporarily, and on December 28, 1962, was interviewed by Maher. This interview and a subsequent investigation disclosed that Hayes had the following record of convictions for violation of traffic ordinances in the State of Ohio:

(a) February 27, 1961—Violation of Cleveland Ordinance 9.1115 for improper backing. Fined $10.00 and costs.

(b) September 23, 1961—Violation of Cleveland Ordinance 9.0504 for improper left turn. Fined $5.00 and costs.

(c) November 21, 1961—Violation of Cleveland Ordinance 9.0304 for improper driving on a one-way street. Fined $5.00 and costs.

(d) December 30, 1961—Violation of Cleveland Ordinance 9.1302 for driving while intoxicated. Fined $100.00, placed on probation and license suspended for three years.

18. Under the procedure of plaintiff, had the policy in this case been processed in the routine manner the information and answers in the application would

have become a part of the issued policy. Condition 21 of the policy provides:

"21. *Declarations.* By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

19. The agent, Lewis, placed the information in the application as it was given to him by Hayes. Had the answer to question 14 in the application been in the affirmative, Lewis would have refused to bind the risk and possibly declined the application. In its instructions to agents on Auto Risk Selection various classifications of risks are denoted by the plaintiff as "unacceptable." One such class is described as follows: "Traffic Law Violators (Record of a Serious Conviction or a Series of Minor Convictions)." Had an application been submitted to plaintiff by Hayes with a full disclosure of his traffic law violations in Ohio and West Virginia during the three year period prior thereto, the plaintiff would have declined to accept the risk or issue a policy.

### Conclusions of Law

It is well settled in West Virginia that a misrepresentation of any fact which is material to the risk made by an applicant for insurance will avoid any policy issued pursuant thereto. Christian v. State Farm Mut. Auto. Ins. Co., (1959) 144 W.Va. 746, 110 S.E.2d 845; Faulkiner v. Equitable Life Ins. Co., (1959) 144 W.Va. 193, 107 S.E.2d 360. The substance of this well-established principle was not changed by the enactment of Chapter 33, Article 6, Section 7 of the West Virginia Code.

In giving a negative answer to Question 14 on the application Hayes misrepresented the facts with respect to his driving record for the preceding three years. It is my conclusion that the misrepresentation was material to the risk, and that the plaintiff would have declined the risk had the answer been in the affirmative. Certainly, in such an event the plaintiff's agent would not have "bound" the risk.

Counsel for defendants argue that since plaintiff alleged only the West Virginia violation in its complaint herein, the evidence of Hayes' Ohio driving record should not properly be considered in passing on the issues here presented. He apparently relies on Rule 9(b) F.R. Civ.P. which requires that circumstances constituting alleged fraud or mistake be stated with particularity. Assuming, *arguendo,* that the rule is applicable to the present case, the answer to this contention is that the answer to Question 14 was the "fraudulent" act and it was particularly alleged in the complaint. A specific traffic violation in West Virginia was also alleged to support both the charge of misrepresentation as well as materiality thereof. These allegations in my opinion were sufficient to satisfy Rule 9(b). The antecedent violations in Ohio which came to light after the complaint was filed were properly admitted and considered on both the issue of the falsity of the statement and the materiality of the question and answer. Even should we assume that the evidence was outside the pleadings an amendment under Rule 15(b) would be appropriate for I can see no prejudice to Hayes since it was evidence of which he certainly had knowledge and which bore directly upon the basic issue involved in this litigation.

Even within the restrictive theory urged by defense counsel as to the scope of the complaint, the Ohio driving record would be admissible on the issue of the materiality of the West Virginia violation, admittedly properly delineated in the complaint. Hayes' answer was patently false in the light of the West Virginia violation standing alone. Had he answered truthfully, the risk would not have been "bound," and no policy would have issued until an investigation of Hayes as a prospective risk had been

completed. Assuredly, such an investigation would have disclosed Hayes' Ohio record, demonstrated that he was an undesirable risk, and no policy would have been issued. It is my conclusion that the evidence of Hayes' record in Ohio was material and properly admitted and considered.

■ Finally, on behalf of defendant Deal, it is contended that the absence of any allegations of the Ohio violations was prejudicial to her in her conduct of the Boone County litigation, and as to her the plaintiff should be estopped from using such evidence. This reasoning is somewhat obscure to me especially since it is admitted that prior to the trial of the Boone County case she and her counsel had ample notice that coverage was being challenged by plaintiff in the present litigation. The limited rights of Deal in this controversy are stated in 7 Am. Jur.2d Automobile Insurance § 222:

" * * * It has also been held that the insurer, having defended an action against the insured, was not estopped from subsequently setting up the defense of noncoverage against the injured person even where the latter had not been notified, usually on the theories that the injured person had surrendered no rights or had not been misled as a result of the defense by the insurer, or that the injured person being a stranger to the agreement, no estoppel could operate in his favor."

In the light of these observations, I conclude as follows:

1. Douglas E. Hayes was guilty of a knowing misrepresentation of a fact material to the acceptance of the risk and the hazard to be assumed by the plaintiff in the issuance of the policy of insurance for which Hayes made application.

2. The material misrepresentation by Hayes avoided the policy of insurance as well as the "binder" of the risk.

3. The plaintiff properly cancelled the policy *ab initio* on the ground of Hayes'

misrepresentation, and no liability attaches to the plaintiff company thereunder.

4. Judgment should be entered in favor of the plaintiff.