## CIRCUIT COURT OF FAIRFAX COUNTY

Jason T. Heinzelman

v.

State Farm Mutual
Automobile Ins. Co.

March 19, 1997

Case No. (Law) 141434

BY JUDGE JANE MARUM ROUSH

This declaratory judgment action came on for a bench trial on July 29, 1996, and December 30, 1996. At the conclusion of the trial, the Court took the case under advisement, and counsel submitted post-trial briefs. The Court has now had the opportunity to carefully review the testimony of the witnesses, the exhibits entered into evidence, and the briefs and argument of counsel. For the reasons stated below, judgment will be entered in favor of the defendant insurance company.

### Facts

The facts of this case are somewhat involved and thus will be set forth at length.[1] On Wednesday, March 2, 1994, plaintiff Jason Heinzelman went to the Fairfax office of Peter Crosby, an independent agent of defendant State Farm Mutual Automobile Insurance Company, to obtain automobile liability insurance for a 1989 Nissan pick-up truck he had recently purchased. Donna Carter, an employee of Mr. Crosby, completed much of the application based on the information supplied by Mr. Heinzelman. One of the questions on the

---

[1] The following recitation of facts constitutes the Court's finding of facts, many of which were disputed at trial. In making the following findings of facts, the court has not deemed any of the disputed facts to be admitted as the result of the plaintiff's failure to respond to the defendant's request for admissions.

application was: "During the past five years have you, the applicant, any household member, or any regular driver ... had an accident or sustained a loss?" Mr. Heinzelman answered "no" to that question. Ms. Carter requested payment of $156.00, representing one-half of the premium due under the policy. Mr. Heinzelman said that he would not have money for the premium until he was paid on Friday, March 4, 1994. Ms. Carter told him that he had no coverage until State Farm received the premium. She said she would hold his application in her pending file and that he should return with the premium check after he was paid. Neither Mr. Crosby nor Mr. Heinzelman signed the binder on March 2, 1994.

Mr. Heinzelman was involved in an automobile accident at 2:30 a.m. on March 4, 1994, in which Martha Zadik and William Fleming were injured. In connection with that accident, Mr. Heinzelman was charged with driving while intoxicated. He subsequently admitted that he was intoxicated at the time of the accident. Defendant's Exs. 4 and 5. In addition, Mr. Heinzelman told the arresting officer that he did not have liability insurance and was charged with failing to have liability insurance.

In the early afternoon of March 4, 1994, some eleven hours after the accident, Mr. Heinzelman returned to the State Farm office and, telling no one of the accident, paid the premium and received a binder for insurance which was marked with an effective date of March 2, 1994 (the date the application was originally completed by Ms. Carter). By signing the application on March 4, 1994, Mr. Heinzelman represented to State Farm that all "my statements on this application are correct," including his representation that he had not "had an accident or sustained a loss" within the last five years. Plaintiff's Ex. 1.

On Monday, March 7, 1994, Mr. Heinzelman reported the accident to State Farm for the first time. State Farm investigated the circumstances of the accident and the issuance of the insurance binder. Following this investigation, State Farm unilaterally altered the effective date of the binder from March 2, 1994, to March 4, 1994, at 1:00 p.m. Plaintiff's Ex. 2B. On March 24, 1994, State Farm issued a policy of insurance to Mr. Heinzelman for the period beginning at 1:00 p.m. on March 4, 1994, and continuing until October 10, 1994. Plaintiff's Ex. 4. That policy was issued based on the application for insurance Mr. Heinzelman completed on March 2, 1994, when he first visited the State Farm agent's office. (There is no evidence that Mr. Heinzelman rejected this policy of insurance or demanded the return of his premium.)

State Farm has refused coverage to Mr. Heinzelman for any liability he might incur as a result of the March 4, 1994, accident and the resulting injuries to Ms. Zadik and Mr. Fleming. Plaintiff's Ex. 6.

This declaratory judgment action was filed on June 7, 1995. Both Ms. Zadik and Mr. Fleming filed suit against Mr. Heinzelman for their personal injuries received as a result of the accident. Those suits were settled by Mr. Heinzelman's confessing judgment in favor of Ms. Zadik in the amount of $25,000.00 and in favor of Mr. Fleming for $5,000.00. In addition, Mr. Heinzelman assigned to Ms. Zadik and Mr. Fleming his rights in this declaratory judgment action.[2] Ms. Zadik and Mr. Fleming agreed not to execute the judgments except by proceeding against State Farm. If, however, this declaratory judgment is determined in favor of State Farm, Zadik, Fleming, and Heinzelman agreed that they will "enter into a Consent Order vacating the [confessed judgments] and the parties will be restored to their respective positions in Law No. 147152 and Law No. 147153 [sic] as if this Settlement Agreement had never existed."[3] Defendant's Ex. 5.

In its answer and grounds of defense to this action, State Farm "admits that it denies insurance coverage for the accident but states that the denial is based upon there being no valid insurance contract in effect at the time of the aforesaid loss." Answer, ¶ 4.

## *Motion for Declaratory Judgment*

The plaintiff claims that the insurance binder is clear and unequivocal as to its terms, and, accordingly, parol evidence is not admissible to vary its terms. The plaintiff acknowledges that parol evidence may be admitted to show a contract was procured by fraud or misrepresentation but argues that State Farm is barred from alleging fraud or misrepresentation because (1) State Farm did not plead fraud, and (2) State Farm waived any fraud or misrepresentation by issuing to the plaintiff a policy of insurance based on the same application it now says contains material misrepresentations. Plaintiff relies on *Virginia Mut. Ins. Co. v. State Farm Mut. Ins. Co.*, 204 Va. 783, 133 S.E.2d 277 (1963), in support of his argument that State Farm waived its right to claim fraud when it issued the plaintiff an insurance policy on March 24, 1994.

State Farm relies principally on Va. Code § 38.2-309 in support of its position that there is no coverage for the accident of March 4, 1994. That section provides, in pertinent part:

---

[2] *Zadik v. Heinzelman*, At Law No. 157804; *Fleming v. Heinzelman*, At Law No. 157803. Mr. McCormack, counsel for Mr. Heinzelman in this action, also represents Ms. Zadik and Mr. Fleming.

[3] Those case numbers refer to two earlier lawsuits filed by Zadik and Fleming against Heinzelman that were nonsuited in August, 1996.

> All statements, declarations, and descriptions in any application for an insurance policy ... shall be deemed representations and not warranties. No statement in an application ... made before or after loss under the policy shall bar recovery unless it is clearly proved that such an answer or statement was material to the risk when assumed and was untrue.

State Farm argues that Mr. Heinzelman's misrepresentations were material to the risk insured, as shown by the trial testimony of Earl Toms, State Farm's underwriter, who testified that he would not have written a policy to the plaintiff had he known of the accident and the resulting driving while intoxicated charge. State Farm maintains that it is not required to plead fraud in order to bar recovery under the policy where, as here, the contract for insurance effective March 2, 1994, was void as the result of material misrepresentation of the insured.

State Farm's answer states, in paragraph 3, that "[State Farm] admits that it denies insurance coverage for the accident but states that the denial is based upon there being no valid insurance contract in effect at the time of the aforesaid loss." Similarly, in paragraph 4 of its answer, State Farm denied that plaintiff "is entitled to insurance coverage under any contract of insurance with defendant." The Court finds that State Farm's answer is not deficient for failing to plead fraud. *See, e.g., Hawkeye-Security Ins. Co. v. GEICO*, 207 Va. 944 (1967).

The Court concludes that there is no coverage for the accident of March 4, 1994. The binder of insurance issued on March 4, 1994, with an effective date of March 2, 1994, is not enforceable because Mr. Heinzelman made a material misrepresentation when he signed the application on the afternoon of March 4, 1994, stating that he had no accidents within the last five years when he had caused an accident less than twelve hours earlier. Had State Farm known of the March 4 accident, it undoubtedly would not have issued its binder for insurance with an effective date of March 2, 1994. Because of Mr. Heinzelman's material misrepresentation, the binder is void *ab initio*, and there is no coverage for the March 4 accident.

Mr. Heinzelman's reliance on *Virginia Mut. Ins. Co. v. State Farm Mut. Ins. Co., supra*, is misplaced. In *Virginia Mutual*, the Supreme Court of Virginia held that an insurer was precluded as a matter of law from denying coverage based on material misrepresentations on an application of insurance, when the insurer, with full knowledge of the misrepresentations, issued a subsequent policy of insurance based on the same application. The Court held

that the insurer by its actions had conclusively demonstrated that the misrepresentations were not material.

The facts of *Virginia Mutual* are instructive. On November 2, 1961, Gerald Kestner visited a State Farm office and applied for automobile insurance for both himself and his wife. Mr. Kestner answered "no" to the question on the application that asked whether he or any member of his household had been denied a driver's license within the last five years, although he knew at that time that his wife was an unlicensed driver having failed at least two attempts to obtain a license. On November 12, State Farm issued the policy. On December 10 that same year, Mrs. Kestner had an accident. On December 11, Mr. Kestner reported the accident to State Farm. He gave to State Farm the police report of the accident that indicated that Mrs. Kestner was not licensed. Later that same day, State Farm reported to the state Division of Motor Vehicles that the insurance policy was in effect at the time of the accident. On December 13, Mrs. Kestner told a State Farm investigator that she was an unlicensed driver. State Farm then undertook a complete investigation of the accident. On December 28, at the request of the Kestners, State Farm issued an endorsement to the policy to reflect a change of the Kestners' address. On January 11, 1962, State Farm received a bill for Mrs. Kestner's hospitalization related to the accident. State Farm did not deny coverage for the hospital bill for almost two months. On February 7, State Farm secured a statement from Mr. Kestner in which he admitted that he knew when he completed the original application that his wife had been refused a driver's license at least two times. On February 12, State Farm issued a new policy to Mr. and Mrs. Kestner covering a new vehicle they acquired the month before. On March 9, State Farm notified the Kestners that it was rescinding all of the policies it had issued to the couple, including the November, 1961, policy and the February, 1962, policy. State Farm gave as the reasons for the rescission the "material misrepresentation" on the application for insurance regarding the status of Mrs. Kestner's licensure.

Construing the predecessor statute to present Va. Code § 38.2-309, the Court in *Virginia Mutual* held that State Farm could not show that the misstatements on the insurance application were material to its decision to insure when, among other things, it issued the Kestners a new policy with full knowledge of the misrepresentations it later claimed voided the policies. The Court reasoned that State Farm's "actions before it was brought into court … show conclusively that State Farm *did not regard* the statements as material." 204 Va. at 788 (emphasis in original). The Court reasoned:

When State Farm issued the policy of February 12, more than sixty days after the accident, it had full knowledge of all the facts upon which it later relied for rescission. If those facts were not regarded by State Farm, on February 12, to be sufficiently material to justify its refusing to issue the new policy, they could not, by March 9, have ripened into a maturity sufficient to support the rescission action at a later date.

*Id.* at 790. Significantly, the Court found that State Farm's actions and inactions "lulled the Kestners into the belief that they were, and had been since November 2, insurable and insured." *Id.* at 790-1.

*Virginia Mutual* is distinguishable from the facts in this case. In this case, State Farm took no actions since learning of the misrepresentations of Mr. Heinzelman that were inconsistent with its steadfast position that there was no coverage until the premium was paid on March 4, 1994, at approximately 1:00 p.m. At best, *Virginia Mutual* stands for the proposition that State Farm is barred as a matter of law from asserting that Mr. Heinzelman's failure to disclose his driving while intoxicated arrest was material to its decision to insure.[4] Nothing in *Virginia Mutual*, however, supports Mr. Heinzelman's position that State Farm's issuance of its policy of insurance on March 24, 1994, with an effective date of March 4, 1994, at 1:00 p.m., requires State Farm to cover an accident that occurred prior to the effective date of the policy, particularly when the existence of the accident was not disclosed to State Farm in response to State Farm's unambiguous inquiry as to prior accidents. In no sense was Mr. Heinzelman "lulled into the belief" that he was insured. Perhaps the most telling evidence in this case is that, when asked by the arresting officer at the scene of the accident, Mr. Heinzelman stated that he had no insurance.

In short, State Farm is not barred by the holding of *Virginia Mutual* from asserting that Mr. Heinzelman's failure to disclose the accident that occurred before he paid the premium for the policy was a material misrepresentation within the meaning of the Va. Code § 38.2-309. The Court concludes that State Farm has clearly proved that Mr. Heinzelman's misrepresentation on the application about the existence *vel non* of prior accidents was material to State

---

[4] State Farm's underwriter, Earl Toms, testified at trial that he "wouldn't have written a policy with a DWI." Nevertheless, the uncontroverted evidence is that State Farm did issue a policy to Mr. Heinzelman after knowing of his DWI arrest. Accordingly, State Farm showed conclusively by its subsequent actions that the DWI arrest could not have been material to its underwriting decision.

Farm's underwriting decision and justified State Farm's refusal to cover the accident.

Although there are no Virginia cases directly on point to the facts of this case, cases from other jurisdictions are in accord with the Court's decision. *See State Farm Mut. Auto. Ins. Co. v. Crouch,* 706 S.W.2d 203 (Ky. App. 1986); *Nationwide Mut. Ins. Co. v. Conly,* 156 W. Va. 391, 194 S.E.2d 170 (1972); *Federal Mut. Ins. Co. v. Deal,* 239 F. Supp. 618 (S.D. W. Va. 1965); *Haas v. Integrity Mut. Ins. Co.,* 4 Wis. 2d 198, 90 N.W.2d 146 (1958); *Adriaenssens v. Allstate Ins. Co.,* 258 F.2d 888 (10th Cir. 1958); *State Farm Mut. Auto. Ins. Co. v. Gaekle,* 131 F. Supp. 745 (N.D. Ind. 1955).

## *Conclusion*

For the foregoing reasons, judgment will be entered in favor of the defendant State Farm.