STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellant,

v.

Norma R. CROUCH, Administratrix of
the Estate of Michael R. Norsworthy,
Deceased, and Norma R. Crouch, Indi-
vidually, Appellee.

Court of Appeals of Kentucky.

March 14, 1986.

John P. Gregory, Jr., Murray, for appel-
lant.

James B. Brien, Jr., Mayfield, for appel-
lee.

Before CLAYTON, DUNN and Mc-
DONALD, J.

CLAYTON, Judge.

On September 7, 1984, Norma Crouch,
individually, and as administratrix of the
estate of Michael R. Norsworthy, filed suit
against State Farm Mutual Automobile In-
surance Company based upon its suppos-
edly wrongful refusal to pay benefits un-
der a binder for automobile insurance is-
sued on November 10, 1983, by E.H. Jor-
dan, exactly two weeks before Norswor-
thy's death on November 24, 1983. By
answer filed November 8, 1984, State Farm
admitted that Jordan, as its agent, did issue
a 30-day binder on the 1976 Oldsmobile
involved in the fatal accident and that Mi-
chael Norsworthy was listed as a driver on
the binder. However, the insurer main-
tained that as a result of material misrepre-
sentations or omissions relating to Nor-
sworthy's prior driving record by Patricia
France at the time she applied for the
policy, the insurer properly rescinded the
policy and revoked the binder on November
29, 1983, the day following submission of
the claim thereunder.

Following the taking of discovery,
Crouch filed a motion for summary judg-
ment. Included with the motion is a legal

memorandum in which Crouch alleges the following facts. On November 10, 1983, Pat France, sister of Michael Norsworthy, discussed the possibility of obtaining additional auto insurance for her brother with Betty Curtsinger, secretary to Mose Jordan, the local State Farm agent. Pat and Michael drove to the offices of Jordan. While Pat made application for the insurance, Michael visited friends across the street. When asked by Betty if Michael had been involved in any wrecks or tickets, Pat recalls that she answered that she did not know. Betty remembers that Pat said "no." After the application was completed by Betty (Mose Jordan was never present), Pat signed it. Michael's presence was not requested. On November 29, 1983, the day following the submission of Pat's claim, she received a letter informing her that her application for insurance was rescinded due to misrepresentations concerning Michael's driving record. A review of Norsworthy's record with the Transportation Cabinet reveals that he had previously been ticketed for speeding three times within the past three years and that his license had been suspended the year before following a citation for reckless driving. Based upon the language of the binder, Crouch argued that State Farm was obligated to make payment under the policy. The binder provides that State Farm is bound for 30 days from the requested effective date "subject to all terms and conditions of the automobile insurance policy...."

In response to this motion, State Farm filed its own motion for summary judgment arguing that France's material misrepresentations with respect to her brother's driving record caused the binder, under KRS 304.14–110, to be void *ab initio*. In addition, State Farm included the following distinctions with respect to Crouch's statement of the facts. Contrary to France's testimony by deposition, Betty Curtsinger did not recall having received a call from Pat France regarding acquiring insurance for Michael Norsworthy, nor did Curtsinger know that Michael was waiting outside the office while Pat applied for the insurance. Curtsinger testified she asked France several times about Norsworthy's driving record, and that France replied that Michael had never been fined, convicted or forfeited bail. Again, France maintains that she said she did not know the answer to these questions.

Deposition testimony by Mose Jordan indicates that upon returning to his office, he asked Curtsinger if she asked the standard questions about Norsworthy's driving record to which she replied, "yes, two or three times." He reviewed the application and forwarded it to Murfreesboro, Tennessee, where it was further reviewed. Jordan additionally testified he cannot issue a valid binder if any driver on the application has more than one ticket in the past 18 months. The company, according to Jordan, will never issue a policy to anyone who has ever had his or her license revoked or suspended. This testimony is confirmed by the affidavit of James H. Thomas, operations supervisor for State Farm.

On May 5, 1985, Crouch filed a response to State Farm's motion, again arguing that the language of the binder speaks for itself and that *Sentry Indemnity Co. v. Brady*, 153 Ga.App. 168, 264 S.E.2d 702 (1980), relied upon by State Farm is inapplicable as it applied to a policy of insurance and not a binder. State Farm responded on May 15, 1985, arguing that no material distinction could be made between a binder and an insurance policy as a binder will not issue for a risk for which a policy would not have issued.

In compliance with a pre-trial order, further memoranda were filed by both parties in June and July of 1985. In this instance, State Farm argued that it had no duty to further investigate, *State Auto Mut. Ins. Co. v. Spray*, 547 F.2d 397 (7th Cir.1977), that the applicant herself was negligent and therefore estoppel could not apply against it, and that the binder was invalid due to misrepresentation. *Nationwide Mut. Ins. Co. v. Conly*, 156 W.Va. 391, 194 S.E.2d 170 (1972); *Adriaenssens v. Allstate Ins. Co.*, 258 F.2d 888 (10th Cir.1958); *Fed. Mut. Ins. Co. v. Deal*, 239 F.Supp. 618

(W.Va.1965); *State Farm v. Gaekle*, 131 F.Supp. 745 (D.C.Ind.1955).

Plaintiff/appellee, by supplemental memorandum, countered that State Farm could not rely upon KRS 304.14–110 regarding misrepresentations due to KRS 304.20–030 prohibiting retroactive annulment of an insurance contract after the occurrence of an injury. Further, Crouch pointed out that the insurance acquired was of a compulsory nature so that once a certificate of insurance had been issued, the insurance contract ceased to be a private contract as a supervening public interest attaches restricting the right of the party in accordance with statutory provisions. In support of this argument, appellees cited *Sentry Indemnity Co. v. Sharif*, 248 Ga.App. 395, 282 S.E.2d 907 (1981), in which the Court of Appeals of Georgia refused to declare void *ab initio* a binder for no-fault auto insurance due to a statute prohibiting retroactive annulment of such policies.

On July 22, 1985, the Graves Circuit Court entered a summary judgment on behalf of Crouch. Notice of appeal was then filed on August 14, 1985. We reverse.

■ We address the issues raised in the order they appear in the parties' various memoranda below, beginning with appellee's memorandum in support of its motion for summary judgment filed April 10, 1985. In that memorandum, Crouch argues that upon issuance of the binder by Mose Jordan on November 10, 1983, a valid contract for insurance arose irrevocably binding State Farm to provide insurance coverage for thirty days. A close examination of the language of the binder reveals, however, that this temporary coverage was not unconditional. In specific terms, the binder provides that,

> State Farm Mutual Automobile Insurance of Bloomington, Illinois, hereby binds as of the requested effective date for a period of 30 days from such date, the insurance applied for, *subject to all of the terms and conditions of the automobile insurance policy and applicable indorsements in current use by such company.* The issuance by the company

of the declarations page of the policy applied for voids this binder. (Our emphasis)

Looking to the declarations section of the automobile insurance policy to have been issued, two of the specified terms upon which State Farm conditioned its insurance, and therefore its binder, were based upon the applicant's agreement that (1) "the statements in these declarations are *your* statements and are *true*," and (2) "we insure you on the basis *your* statements are *true....*" (our emphasis). Under the terms of the binder, therefore, State Farm made no agreement to provide coverage, temporary or permanent, unless the applicant was honest in completing the application for coverage. Moreover, our legislature has seen fit to legitimize this type of contractual incorporation of the policy terms in the binder contract by its definition of a binder as being "deemed to include all the usual terms of the policy as to which the binder was given...." KRS 304.14–220.

■ Appellant, responding to Crouch's initial memorandum, filed its own arguments on April 25, 1985. State Farm, in a manner similar to our conclusions above, maintains in its responsive memorandum that the material misstatements of Pat France at the time of application, whether innocent or fraudulent, acted to statutorily invalidate the policy contract. In support of this argument, State Farm cites us to KRS 304.14–110 which states:

> All statements and descriptions in any application for an insurance policy or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. *Misrepresentations, omissions and incorrect statements shall not prevent a recovery under the policy or contract unless either:*
>
> (1) *Fraudulent;* or
>
> (2) *Material either to the acceptance of the risk,* or to the hazard assumed by the insurer; or
>
> (3) *The insurer in good faith would either not have issued the policy or*

contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise. (our emphasis)

It is undisputed by the parties that neither the binder in question nor the policy would ever have issued had Pat France or Michael Norsworthy accurately completed the application. The uncontradicted affidavit of the State Farm representative so stating forecloses any dispute on this point. While Kentucky has not yet had occasion to apply the above statute to a controversy involving a binder of insurance, our courts have in several instances applied the principles set forth in that statute to invalidate various policies of insurance based upon fraudulent or material misrepresentations. *Prudential Insurance Co. v. Lampley,* 297 Ky. 495, 180 S.W.2d 399 (1944); *Citizens Insurance Co. v. Whitley,* 252 Ky. 360, 67 S.W.2d 488 (1944); *Ford v. Commonwealth Life Ins. Co.,* 252 Ky. 565, 67 S.W.2d 950 (1934). We see no reason to distinguish between a binder and an insurance policy for the purposes of KRS 304.-14–110 or to differentiate the various policies of insurance involved in the above cited cases and that now are in dispute. As pointed out in *Potomac Ins. Co. v. Motorist Mut. Ins. Co.,* Ky.App., 598 S.W.2d 461 (1979), a binder is merely a temporary contract of insurance issued until a permanent policy can be obtained.

■ Appellee seeks to diminish the importance of KRS 304.14–110 on two grounds. First, she argues that appellant insurance company is estopped from raising the issue of fraud or material misrepresentation based upon State Farm's alleged negligent failure to investigate. We disagree. As appellant points out under *State Auto Mutual Ins. Co. v. Spray,* 547 F.2d 397 (7th Cir.1977) (interpreting Kentucky law), an insurer must have clear notice and

full cognizance of the true facts to be bound by its policy. In *Spray,* an applicant for automobile insurance misrepresented that he had not been convicted of a moving violation within the preceding three years. In fact, his driving record revealed three such convictions. Under such circumstances, it was held that the insurer could not be estopped from asserting the insured's false representations. *Id.* at 401. As put forth in *Paxton v. Lincoln Life Insurance Co.,* Ky., 433 S.W.2d 636, 638 (1968).

Simply stated, the rule is that as between the applicant and the insurance company it is the applicant's responsibility to see that the application is correctly filled out.

Moreover, even were Kentucky case law not so clearly against the appellee on this point, we believe that the appellee was estopped herself from raising this issue in the first instance given her own failure to obtain information concerning her own brother's driving record. 28 Am.Jur.2d *Estoppel and Waiver* § 80.

■ Appellee's second argument against application of KRS 304.14–110 rests upon the prohibition against retroactive annulment of liability policies found in KRS 304.-20–030. Under that statute,

No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be void.

According to appellee, this provision evidences a legislative policy that compulsory insurance in the nature of no-fault auto insurance, once issued, ceases merely to be a private contract between the parties, as a supervening public interest attaches, restricting the right of the insurer to retroactively revoke the policy. In support of this viewpoint, appellee cites us to *Sentry Indemnity Company v. Sharif,* 248 Ga. 395,

282 S.E.2d 907 (1981), holding for the identical proposition.

We do not join in that decision. Both KRS 304.14–220 and KRS 304.14–110 evidence a competing public policy that those who apply for insurance be honest and forthright in their representations. Such honesty and conscientiousness is fundamental for the physical safety of other innocent insured drivers. We note additionally that appellant has cited no judicial authority other than *Sharif* as support for its public policy argument. Appellant, on the other hand, cites us to numerous judicial opinions from other jurisdictions declaring such fraudulently obtained policies or binders to be void *ab initio*. *See State Farm Mut. Auto Ins. Co. v. Gaekle*, 131 F.Supp. 745 (D.C.Ind.1955); *Federal Mutual Insurance Co. v. Deal*, 239 F.Supp. 618 (D.C.W.Va.); *Adriaenssens v. Allstate Ins. Co.*, 258 F.2d 888 (C.A. 10th Cir.1958). We believe these decisions to represent the mainstream of judicial authority in this area of the law and, therefore, no retroactive annulment has occurred, the binder being void *ab initio*.

Accordingly, we reverse the judgment of the Graves Circuit Court.

Further, pursuant to 2.(a) of the Order designating the case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate Rules of Civil Procedure pertaining to further appellate steps, are reinstated effective the date of this opinion.

All concur.